Pages 1 - 43

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE PHYLLIS J. HAMILTON

ANDREA RESNICK, et al.,              )
                                     )
              Plaintiffs,            )
                                     )
     vs.                             )  NO. C 09-0002-PJH
                                     )
WALMART.COM USA LLC, et al.,         )
                                     )  San Francisco, California
              Defendants.            )  Thursday
                                     )  April 9, 2009
_____)  2:30 p.m.
O'CONNOR v. WALMART.COM _____ )  NO. C 09-0096-PJH
ENDZWEIG v. WALMART.COM              )  NO. C 09-0111-PJH
SCHMITZ v. WALMART.COM               )  NO. C 09-0116-PJH
LYNCH, et al., v. WALMART.COM ____   )  NO. C 09-0138-PJH
GROCE, et al., v. NETFLIX            )  NO. C 09-0139-PJH
SIVEK v. WALMART.COM                 )  NO. C 09-1056-PJH
FARIS v. NETFLIX                     )  NO. C 09-0180-PJH
SLOBODIN v. NETLFLIX                 )  NO. C 09-0225-PJH
ANTHONY, et al., v. WALMART.COM      )  NO. C 09-0236-PJH
POLK-STAMPS v. NETFLIX               )  NO. C 09-0244-PJH
SHEELER v. WALMART.COM               )  NO. C 09-0274-PJH
CHAPMAN v. NETFLIX _____  )  NO. C 09-0294-PJH
OROZCO v. NETFLIX _____  )  NO. C 09-0297-PJH
LANDELS, et al., v. NETFLIX _____  )  NO. C 09-0340-PJH
GRIME v. NETFLIX _____  )  NO. C 09-0349-PJH
MEYER v. WALMART.COM _____  )  NO. C 09-0361-PJH
RANDALL v. WALMART.COM               )  NO. C 09-0368-PJH
HIRSCH v. NETFLIX                    )  NO. C 09-0375-PJH
MISCIOSCIA v. NETFLIX                )  NO. C 09-0377-PJH
PATRAS v. NETFLIX _____  )  NO. C 09-0378-PJH
CHATELAIN v. NETFLIX _____  )  NO. C 09-0391-PJH
WEINER v. WALMART.COM                )  NO. C 09-0398-PJH
MILLROOD v. WALMART.COM              )  NO. C 09-0399-PJH
KOBER v. WALMART.COM                 )  NO. C 09-0400-PJH
LACABE v. WALMART.COM _____  )  NO. C 09-0402-PJH
ROY v. NETFLIX                       )  NO. C 09-0434-PJH
BRUNO, et al., v. WALMART.COM        )  NO. C 09-0445-PJH
ZAKER v. NETFLIX                     )  NO. C 09-0447-PJH
PARIKH v. NETFLIX                    )  NO. C 09-0496-PJH
JOHNSON v. WALMART.COM               )  NO. C 09-0553-PJH

*Lydia Zinn, CSR, RPR*
*Official Reporter - U.S. District Court*
*(415) 531-6587*

| | | |
|---|---|---|
| GANNON v. WALMART.COM | ) | NO. C 09-0554-PJH |
| WILLIAMS v. NETFLIX | ) | NO. C 09-0678-PJH |
| NOREM v. NETFLIX | ) | NO. C 09-0956-PJH |
| HADDAD v. NETFLIX | ) | NO. C 09-0958-PJH |
| CORNETT v. NETFLIX | ) | NO. C 09-0960-PJH |
| MACIAS v. NETFLIX | ) | NO. C 09-0961-PJH |
| RANDLE v. NETFLIX | ) | NO. C 09-0962-PJH |
| WIEBE v. NETFLIX | ) | NO. C 09-1274-PJH |

## TRANSCRIPT OF PROCEEDINGS

**APPEARANCES:**

**For Plaintiffs:**      Howrey LLP
                         1299 Pennsylvania Avenue, NW
                         Washington, D.C.  20004-2402
                         (202) 783-0800
                         (202) 383-6610 (fax)
                **BY:  ROBERT G. ABRAMS**
                      **THOMAS A. ISAACSON**
                      **PAUL ALEXANDER**

**For Plaintiffs:**      Saveri & Saveri, Inc.
                         111 Pine Street, Suite 1700
                         San Francisco, CA  94111
                         (415) 217-6810
                         (415) 217-6813 (fax)
                **BY:  GUIDO SAVERI**
                      **R. ALEXANDER SAVERI**

**For Plaintiffs:**      Audet & Partners, LLP
                         221 Main Street, Suite 1460
                         San Francisco, CA  94105
                         (415) 568-2555
                         (415) 568-2556 (fax)
                **BY:  WILLIAM M. AUDET**
                      **AARON H. DARSKY**

**For Plaintiffs:**      Berger & Montague, P.C.
                         1622 Locust Street
                         Philadelphia, PA  19103-6305
                         (215) 875-3000
                         (215) 875-4604 (fax)
                **BY:  PETER RUSSELL KOHN**

(Appearances Continued On Next Page)

**Reported By:    Lydia Zinn, CSR #9223, RPR**
                  **Official Reporter - U.S. District Court**

```
1   APPEARANCES (CONT'D)

2   For Plaintiffs:        Hersh and Hersh
                           601 Van Ness Avenue, Suite 2080
3                          San Francisco, CA  94102-6396
                           (415) 441-5544
4                          (415) 441-7586 (fax)
                      BY:  MARK E. BURTON, II
5
    For Plaintiffs:        Spector Roseman Kodroff & Willis, P.C.
6                          1818 Market Street, 25th Floor
                           Philadelphia, PA  19103
7                          (215) 496-0300
                      BY:  EUGENE A. SPECTOR
8
    For Plaintiffs:        Berman DeValerio
9                          425 California Street, Suite 2100
                           San Francisco, California  94104
10                         (415) 433-3200
                           (415) 433-6382 (fax)
11                    BY:  JOSEPH J. TABACCO, JR.
                           TODD A. SEAVER
12
    For Defendant          Wilson Sonsini Goodrich & Rosati
13  Netflix:               1301 Avenue of the Americas, 40th Floor
                           New York, NY  10019-6022
14                         (212) 999-5800
                           (212) 999-5899 (fax)
15                    BY:  JONATHAN M. JACOBSON
                           SARA CIARELLI WALSH
16
    For Defendant          Susman Godfrey, L.L.P.
17  Walmart.com USA LLC:   1000 Louisiana Street, Suite 5100
                           Houston, TX  77002-5096
18                         (713) 653-7827
                           (713) 654-3380 (fax)
19                    BY:  NEAL STUART MANNE

20

21

22

23

24

25
```

1          **THE CLERK:**  Calling Civil Case Number 09-002,

2    Andrea Resnick, et al., versus Walmart.com, et al., and all

3    related cases.

4          **THE COURT:**  All right.  So I don't need you all to

5    identify yourselves yet.  Let me just go through the list.  I

6    want to see who's here on which case.

7          I'm afraid, given the number, that there has been

8    some presumption that there is -- that all the cases have been

9    consolidated; but I did receive a case-management statement

10   listing all 39 cases that have been filed in the Northern

11   District or removed to the Northern District of California.

12   And there is a service list on the case-management statement

13   which lists a lot more attorneys than there appear to be here.

14   So we'll go through it, and I'll find out who's here on which

15   case.

16         I have some preliminary matters to discuss.  I

17   appreciate you all spending the time to prepare a

18   case-management statement using the Northern District exemplar;

19   however, today is not the day that we're going to go through

20   and come up with a case-management plan for the entirety of the

21   litigation.  There are some preliminary matters that we'll talk

22   about.

23         I wanted to take this opportunity to give you all

24   some idea about what I expect in terms of the overall

25   litigation, and to give you some guidance as you continue your

1   meet-and-confer efforts in preparation of the second pretrial

2   order.  We'll issue one today, but only as to some preliminary

3   matters.

4           Now, starting first with the whole question of what

5   cases are involved, you all are aware that the MDL has not yet

6   entered an order consolidating and/or transferring any cases.

7   It is anticipated that that will occur sometime in the near

8   future.  However, as it currently stands today, there are only

9   11 cases that were presented to the panel that are on the list.

10  And that -- they are -- well, 11 from the Northern District,

11  and one in the Western District of Washington.  So there are

12  only a dozen cases.  As I understand from your papers, there

13  are, in addition to the 39 cases filed here, 19 -- 18 or 19

14  cases filed in other states which may be transferred as

15  tag-alongs.

16          Now, I would like to avoid problems that I've had in

17  my other MDL with -- and I recognize any number of you from

18  that proceeding as well.  And so I'm sure you're aware of some

19  of these problems; but the -- the relationship between related

20  cases filed here, cases filed elsewhere, and cases related to

21  the MDL can complicate the docketing system for our court.  So

22  I want to start off with everyone understanding what is

23  expected of you in terms of filing requirements.

24          Until the MDL is formalized, all of these cases are

25  individual cases, which means anything that's filed in one case

1   only applies to that one case.  So if you want to file

2   something that pertains to all 39, you have to file in each of

3   the dockets.

4           After the MDL is formalized, then you only have to

5   file the -- let's see.  I have specific rules.  You only have

6   to file in the MDL, unless it's a document that pertains to an

7   individual case only, or if it's a terminating document.

8           If it's a terminating document, that always needs to

9   go under the case number of the original member case in

10  addition to the MDL; but we're still only talking about 12

11  cases.

12          With regard to the cases that are not members of the

13  MDL, if you want this matter treated in some kind of

14  consolidated fashion -- and, as I understand it, both sides

15  agreed to the consolidation of the cases -- there has to be

16  some formal act taken to make it part of the MDL.  Relating the

17  case is simply not enough.

18          I've already related all of the Northern District

19  cases to the lead case -- the Resnick case -- but you're also

20  going to have to ask the MDL to make the other cases part --

21  members of the MDL, in order to have consolidated treatment.

22          If you don't do that, then anything filed will apply

23  to only the 12 cases that the Panel has directly consolidated

24  and sent to me, and the other remaining 28 cases are on their

25  own.  Okay?  Everybody clear with that?

```
 1            I assume that this can be done.  You all are

 2   experienced in this regard.  I'm sure you know how to make

 3   application with the MDL to do what you need to do to get it

 4   all under the same umbrella; but I just want you to start out

 5   being mindful of what you're filing, so that we don't have the

 6   difficulties that I've experienced before in having to go

 7   through and clean up the docket.  We don't have the time to

 8   baby-sit the docket.  And I'd simply like you all to take that

 9   responsibility to make sure that you're filing correctly.  This

10   is more a problem for the plaintiffs' counsel than it is for

11   defense counsel.

12            So let's -- I think I'd like to find out from you all

13   what your plan is in terms of consolidating beyond the 12

14   cases.  Obviously, there's been some discussion, because you

15   all are -- have filed this statement on behalf of 39 different

16   firms, so obviously, you're further along than I am on this.

17   So I'd like some of you to tell me what you've done or what you

18   anticipate doing.

19            MR. G. SAVERI:  Your Honor, good afternoon.  Pleasure

20   to meet the Court again.

21            Although there are many cases -- individual cases --

22   that have been filed, all the attorneys for all of the

23   individuals -- individual cases that have been filed have

24   selected Mr. Abrams to speak on behalf of all of them, with the

25   exception of a few cases that were filed down in Santa Clara
```

1  County, and they were moved to the other court.  There's a

2  motion pending to send them back.  Mr. Audet, who is here, will

3  be speaking for those few cases; but with reference to all the

4  other cases, all of the attorneys are in agreement -- at least,

5  for the presentation of this conference today -- that

6  Mr. Abrams would be speaking for all of them.  And he has the

7  authority to speak on behalf of all the plaintiffs' cases.

8          **THE COURT:**  Okay.

9          **MR. G. SAVERI:**  So he would be making the statement.

10          **THE COURT:**  On behalf of the 35; not on state cases?

11          **MR. G. SAVERI:**  Right.  And I may say that my good

12  friend, Mr. Jacobson, who we all know from the DRAM case, is

13  representing Netflix.  And it's nice to see Mr. Jacobson again.

14  We started three or four years ago together.  And now here we

15  are again.  I don't know if it's good or bad, your Honor.

16          This is Neal Manne, from the Susman office -- an old

17  friend of mine who's going to represent Wal-Mart.  He's a

18  superb lawyer and a good friend.  And we should have no trouble

19  with him, or Mr. Jacobson.  So I will take care of both of

20  them.  So that's --

21          **THE COURT:**  Thank you for the introductions,

22  Mr. Saveri.  All right?

23          **MR. G. SAVERI:**  All right.

24          **THE COURT:**  Let's hear from Mr. Abrams, though.

25          So you've had discussions with counsel representing

1    all of the various different cases that have been filed?

2          MR. ABRAMS:  Yes, your Honor.  And I -- and we've had

3    discussions with all of those counsel, along with defense

4    counsel.  And I do have authority to speak on behalf of the 12

5    cases you said, as well as all those that we filed on behalf of

6    this joint statement.

7          We ask that, in an effort to make it easier --

8    frankly, I did not appreciate -- I appreciated it, but not as

9    fully as you said it -- what you just said.  We will get all of

10   those coördinated.  That's in our interests.  It's in the

11   defendants' interests.  It's in the Court's interests, and it

12   will be done.

13         THE COURT:  I mean, because the alternative is, if

14   they're not -- if they simply remain as related to the MDL, I'm

15   going to go forward with the MDL, as I'm required to do; but

16   the others are going to be stayed.  I'm sure you don't want

17   that.  So if you want all of them to be active at the same

18   time, we need them under the same umbrella.

19         MR. ABRAMS:  Yeah.  We will do that.

20         THE COURT:  Okay.

21         MR. ABRAMS:  Okay.

22         THE COURT:  Okay.  So there are some other things

23   that we need to talk about.

24         MR. JACOBSON:  Your Honor, just a couple of

25   housekeeping matters, just so that you have everything

1   straight.

2            THE COURT:  Mm-hm.

3            MR. JACOBSON:  There are a bunch of federal cases.

4   They are all essentially identical.  I believe tag-along

5   notices have been filed with respect to all of them.  So at

6   some point, they should all be here.

7            THE COURT:  Those are the ones in Exhibit C to your

8   statement?

9            MR. JACOBSON:  Yes.  Yes, your Honor.

10           There should have been -- and if there are not, we'll

11  make sure there promptly are -- tag-along notices filed with

12  respect to those cases.  The --

13           THE COURT:  There are 18 federal cases, and one state

14  court case.  So are you referring to just the federal cases?

15           MR. JACOBSON:  That's what I'm trying to clarify.

16           So there are four California state cases that were

17  removed here that are subject to a motion for remand.  There's

18  an additional California state case that has not been removed.

19           And there is a Florida state case that was removed

20  yesterday.  The Florida case -- I'm quite confident the removal

21  will stick.  And we will be filing a tag-along notice as soon

22  as we get a docket number.  You can't do it until you get one.

23  So that will be coming here in due course.

24           Where this is quite different from DRAM is that,

25  although we we do have separate California Cartwright Act cases

1  here, we do not have a multiplicity of cases brought under

2  different state laws.  As you may recall in DRAM, many of the

3  cases were brought before the Class Action Fairness Act was

4  passed.  So we had all sorts of procedural complications there

5  that we do not anticipate encountering here.

6          At the end of the day, we should have possibly some

7  cases in California state court, but everything else should be

8  here so that, between your Honor and the Superior Court, we

9  should have everything here.  And so the management should be a

10 good deal more simple here than it was in DRAM.

11         **THE COURT:**  All right.  Okay.  Thank you for

12 clarifying that.

13         Now, there are a lot of -- there are a number of

14 things that need to be resolved before we can talk about things

15 like the case scheduling, and motions for class certification,

16 and what have you.  And one of those things is, as I mentioned,

17 we need to settle the MDL.

18         I mean, there needs to be the formal order.  You all

19 need to get the tag-along notices submitted.  You need to make

20 sure that all of the other member cases are under the MDL

21 umbrella.  I am not going to set a schedule until -- at least,

22 not a schedule for all pretrial matters until that's done.

23         Shortly after that is done or -- and you can

24 certainly be working on it while you're working on the

25 procedural matters -- is the consolidated complaint.

1          You all provide different proposals as to when the

2    consolidated complaint should be done.   Clearly, you should --

3    I assume you contemplated consolidating the complaint,

4    including everyone.   So it's probably better to do that after

5    we've gotten everyone, you know, on my docket, or maybe

6    simultaneously with that.

7          And it would also seem to me that at the same time,

8    you need to be talking about the plaintiffs' lead counsel's

9    structure, and what have you.

10          I will simply tell you what my preferences are, and

11   you can take those into account; but obviously, you're free to

12   agree to whatever you wish that's reasonable.   As most of you

13   know, I don't generally want to be involved, and hope not to be

14   involved in the determination as to lead counsel.   I mean, it

15   would seem to me if you've all been this coöperative, you can

16   make that decision yourselves.

17          And in terms of the organizational structure, whether

18   or not there's somebody from the East who's sitting on the

19   executive committee and -- I don't really want to be involved

20   in that, and would hope that you all could make whatever

21   determination you want.

22          I'll simply tell you what I'd like; and that is that

23   there be, obviously, lead counsel designated who's primarily

24   responsible for the presentation of briefs and making oral

25   argument on any motions that are presented.

1          And I would also like liaison counsel.  Whether or

2     not lead counsel and liaison counsel are the same is of no

3     moment to me; although I would prefer -- because liaison

4     counsel is someone who my staff can call to get something done,

5     to get extra copies, to have things redone, et cetera, I would

6     prefer that whoever serves as liaison counsel be someone who's

7     local.  And it doesn't matter with regard to lead counsel.

8     Doesn't matter who you select; but my preference would be

9     Mr. Tabacco's firm, Mr. Saveri's firm -- I mean, I've seen you

10    all a lot.  My staff is obviously comfortable calling you.

11    You're comfortable calling my staff to figure out what needs to

12    be done.  So just so that I have somebody that we can get a

13    pretty quick response from, if necessary, as liaison counsel;

14    but everything else is just up to you.

15         And what I would anticipate is that you simply submit

16    to me a stipulation on that.  So, as far as I can tell, you

17    need to -- we need to set a deadline for that process.

18         And the consolidated amended complaint should be

19    filed shortly after that process has been completed.  All

20    right?

21         And I would anticipate that taking place after all

22    the other cases have been brought here.  So we're not talking

23    about something that's going to happen in the next couple of

24    weeks.  I imagine it will take 30 to 60 days to get some of

25    these things figured out.

```
 1            Any ideas about that?
 2        MR. ABRAMS:  My experience, your Honor, which I don't
 3   think really will hold the day, because they do it any way they
 4   want, is the MDL should rule fairly promptly in this case.  I
 5   argued the MDL.  The Panel said in that argument it seems to
 6   me -- and I will tell you what I said about this Court,
 7   because -- but it seems to me this case belongs in the Northern
 8   District of California.
 9            I said, "I never met Judge Hamilton.  I don't know,
10   but she is holding this conference.  She did require the filing
11   of a statement.  I would presume that she's going to be willing
12   to take the case."  I said, "I don't know that, because I never
13   met Judge Hamilton."
14            The judge -- the chief judge of the Panel, whose name
15   I now forget, said it seems -- and to other people arguing --
16   the case really belongs in the Northern District.  I would
17   think it will be here shortly.
18            We did -- and I should have said this before.  We had
19   filed amended statements with the MDL as to the cases that have
20   been filed.  So when they send it to you, now, there probably
21   has been a case or two since our last one.  I just don't
22   recall.  They should send it with all those cases.
23            We will --
24        THE COURT:  Everything I've gotten from them thus far
25   has only listed the 12.
```

1              **MR. ABRAMS:**  I don't doubt it.  And we'll deal with

2  that.

3              You know, so I can't really say whether it will be

4  tomorrow, next week, or next month.

5              **THE COURT:**  Yeah.

6              **MR. ABRAMS:**  But who knows?

7              **THE COURT:**  Yeah.  We don't have to --

8              **MR. ABRAMS:**  We will be prepared promptly to file a

9  consolidated amended complaint.  We proposed within 30 days of

10 getting an order from the MDL, it will be filed.

11             **THE COURT:**  Within 30 days of the final decision.

12 Okay.

13             **MR. ABRAMS:**  Yes, your Honor.

14             **THE COURT:**  Even if the MDL decides, for some reason,

15 not to consolidate, the 39 cases are still on my docket.  And

16 we'll --

17             **MR. ABRAMS:**  We can do that.  And we're prepared to

18 say to your Honor in -- and, by the way, under the rules, your

19 Honor's orders would hold, even if the case went somewhere

20 else.  Another judge could revisit them, but your Honor's

21 orders would hold.

22             **THE COURT:**  Sure.

23             **MR. ABRAMS:**  We are prepared to move forward with

24 this case.  We are prepared in a short amount of time to file a

25 motion for lead counsel in the plaintiffs' structure of the

```
 1   case.  And I'm hopeful that that's not going to be a big issue.
 2   And we are prepared, as I just said, to file for -- file an
 3   amended consolidated complaint.  And we -- as I said, within 30
 4   days.
 5           If you'll excuse me.
 6           THE COURT:  Within 30 days of the MDL's decision,
 7   then, you would be prepared to file the motion or stipulation?
 8           MR. ABRAMS:  For lead counsel?  We could do that --
 9   well, we could do that with the cases you have here, but it's
10   probably best to wait until all of the cases are before you for
11   that motion.  And we can file a consolidated complaint, but we
12   probably should wait for the MDL to send it to you; but within
13   30 days of that, we will be -- we can file.  You can order, and
14   we can file an amended consolidated complaint.
15           Within, let's say, two weeks of ruling -- or sending
16   the MDL here, is my supposition for the statement -- we would
17   be prepared to file a motion for the organizational structure
18   of the plaintiffs' case.
19           THE COURT:  Okay.  Then how about two deadlines,
20   then?  Within two weeks of the final decision of the MDL,
21   consolidating the cases that are currently before them, the
22   motion for appointment of lead counsel and organizational
23   structure --
24           MR. ABRAMS:  Yes.
25           THE COURT:  -- or stipulation.  I keep insisting
```

1  stipulation, and not a motion; but one of the two will be filed

2  within two weeks.  Okay?

3            **MR. ABRAMS:**  Yes.

4            **THE COURT:**  And then within 30 days -- and then you

5  all will do what the -- the defense will make sure that the

6  tag-along actions are before the MDL.  I think they act on

7  those pretty quickly.  And --

8            **MR. JACOBSON:**  A couple of weeks.

9            **THE COURT:**  That's pretty quickly in my world.

10           And you all work on making sure that the other member

11  cases are part of the MDL.

12           **MR. ABRAMS:**  Yes, your Honor.

13           **THE COURT:**  And then within 30 days of getting all --

14  I count 58 -- cases together, then the consolidated amended

15  complaint.

16           **MR. ABRAMS:**  I don't know if we're saying the same

17  thing.

18           So there's going to be an order transferring the

19  cases, let's assume, to your Honor.

20           **THE COURT:**  And if it, indeed, includes all of them,

21  that's fine; but I just anticipate that it's not going to

22  initially include --

23           **MR. ABRAMS:**  Well, there may be cases from time to

24  time that are filed.  And they would be tag-along cases that

25  would be sent to your Honor.

1          We could still -- you know, we could still --

2     your Honor could still move forward with the cases that have

3     been sent by the MDL.  We can still file the amended

4     consolidated complaint.

5          **THE COURT:**  Well, I want to make sure.  I mean, it's

6     one thing -- you talked with the attorneys with respect to the

7     39 cases; but you haven't, have you, with regard to the cases

8     that would be designated tag-along cases from the other states?

9          **MR. ABRAMS:**  Well --

10         **THE COURT:**  Shouldn't they have some input into the

11    consolidated amended complaint?

12         **MR. ABRAMS:**  They will be sent here as tag-along

13    cases.  They're complaints that they file.  If history were to

14    tell us, they're all identical to our initial complaint; I

15    mean, virtually identical.  There are a couple of words here or

16    there.  And, as long as their complaints are the same, their

17    consolidated amended complaint is going to encompass those

18    claims.

19         Now, I suppose if they had a tag-along case that

20    raised new claims or causes of action, then the Court would

21    have to deal with that as a separate issue, you know.  I -- you

22    can make up any claim.

23         **THE COURT:**  Mr. Jacobson.

24         **THE COURT:**  So, in other words, you're saying we

25    don't really have to wait for the tag-alongs?

1            **MR. ABRAMS:**  Exactly.

2            **MR. JACOBSON:**  In general, I absolutely agree with

3    that.

4            What -- there is a possibility -- and in the Florida

5    case, we have that possibility -- of a variation in the claims.

6    The factual allegations of the Florida case are the same, but

7    the relief sought is a bit different.

8            What I think makes most sense -- and what we've done

9    in other cases -- is to wait for the first batch of cases to

10   come here, because we believe it's here.  And you'll get a

11   phone call before it happens, as I think you know from your

12   prior experience, in any event.  But let's say it comes here.

13   Let's -- let's deal with the first batch of cases.  Let's get

14   those all in the consolidated amended complaint.

15           And then when later cases are filed, have a

16   case-management order that says they will be governed by the

17   consolidated amended complaint unless they affirmatively opt

18   out and state the reasons for doing so.  I think that's the

19   most efficient.  I think we actually did that in DRAM, as I

20   recall.  And I think that would be the most efficient way of

21   handling the case.

22           **MR. ABRAMS:**  I agree with that.

23           **MR. G. SAVERI:**  We did that in DRAM, your Honor.

24   Exactly.  We took care of all the cases that were before the

25   Court.  And if any tag-along cases came in, there was a

1    provision in the Order that you issued that said that they

2    would be blended in, and all of the provisions of the Order

3    would apply to them unless there was something unique in the

4    cases.  And I think that's probably the best way to go here.

5            **THE COURT:**  Okay.  All right.  So then the

6    consolidated amended complaint, then, would only depend upon

7    the initial action that's sent by the panel?

8            **MR. ABRAMS:**  Correct.

9            **THE COURT:**  And you seem to think that it's going to

10   be something to the -- close to the 39 cases?

11           **MR. ABRAMS:**  I do.

12           **THE COURT:**  Okay.  All right.  So how about 30 days,

13   then, from the Order?

14           **MR. ABRAMS:**  Terrific.

15           **THE COURT:**  Okay.  That will work.

16           Now, there are a couple of other things that I wanted

17   to address today as well.  One is that my household has a

18   Netflix account.  And it's actually -- I am pretty sure it's in

19   my husband's name, although he doesn't know how to use it.  I

20   order all the movies.  And it's very user friendly; but in any

21   event, I am aware that several of the judges on the Panel filed

22   a renunciation of interest; renunciation of interest in any

23   class action.

24           The canons require us, obviously, to recuse ourselves

25   if we have a financial interest in the outcome.  And,

1    obviously, being a class member of a certified class would

2    qualify.

3            It's not entirely clear that -- until the class is

4    certified whether or not it's an issue.  Indeed, there's some

5    suggestion that it's not an issue until the class is certified.

6            However, out of an abundance of caution, I would

7    certainly like to avoid any disqualification in the case,

8    particularly given the complicated procedural measures that

9    we're getting ready to undertake.  So it's my intention to also

10   file a renunciation of any interest in the class; to opt out,

11   if you will, preëmptively; to get that on file now; but I did

12   want to just kind of talk to you all about just the -- as a

13   practical matter, whether or not there are any other options

14   that might be better.

15           As I indicated, I'm pretty sure our household account

16   is in my husband's name, so he would be the one actually opting

17   out.  I would renunciate simply because he's within the third

18   degree of relationship that the canons require that I be

19   concerned with; but it doesn't seem that there's much that he

20   can do, other than opt out when and if he gets a notice in the

21   mail.

22           So I was thinking that maybe there's a better

23   alternative; and that is you all have included in your

24   case-management statement a definition of the class.  What do

25   you think about defining the class to not only exclude

1  defendants, but to exclude the Court and any members within

2  three degrees and her staff?

3         **MR. ABRAMS:**  We're happy to do that, your Honor.

4         **MR. G. SAVERI:**  Your Honor, we've done that in many

5  cases we've filed.  We exclude everybody.  And, in fact, it was

6  rather interesting.  We recently settled a cosmetic case a year

7  ago with Judge Armstrong.  And I got a call from one of the

8  class members indicating that, you know -- I wonder whether

9  your wife got some product when she went down and got the free

10 product.  And they told her not only was I excluded, but my

11 wife was also excluded from participating in the settlement.

12 So we put those right in the class definition.  That would take

13 care of it.

14        **THE COURT:**  I think that would take care of any

15 concern I have about my spouse.  I mean, I could easily file

16 this renunciation.  And we'll do it in each one of the cases.

17 I just thought it would be easier to deal with my staff and my

18 spouse in that way.

19        **MR. ABRAMS:**  I think that's an excellent idea.  And I

20 think, actually, what it really does is it deals with the

21 future.  I can speak today and say the plaintiffs have no

22 concern.  And I'll say it on the record.  And it's not an

23 issue; but the next plaintiff that comes along -- and I don't

24 know -- I can't speak for him --

25        **THE COURT:**  Right.

1          **MR. ABRAMS:**  -- or her.  So I think that's an

2    excellent idea.

3          **THE COURT:**  So you all will do that.  You will

4    rewrite the class definition to include --

5          **MR. ABRAMS:**  Yes.

6          **THE COURT:**  -- include that broad exclusion?

7          **MR. ABRAMS:**  Yes, we will.

8          **MR. JACOBSON:**  Not to be too much of a wet blanket,

9    but all of the credit-card cases -- and we have the same issue

10   because all of the judges have credit cards.  And the class

11   definitions invariably do exclude the Court and any officers

12   associated with the Court, which is fine; but most of the

13   judges have also filed renunciations of interest as well.  And

14   I think, in your Honor's interests, just in an abundance of

15   caution, you might want to consider that.

16         **THE COURT:**  No.  My intention was to do both.

17         I was concerned about making sure my spouse wasn't

18   covered with it, so he wouldn't have to file something in each

19   one of these; because otherwise, he'd have no opportunity to

20   opt out until he was actually served with notice.

21         **MR. JACOBSON:**  I'm sorry.  I did not understand that.

22   Obviously, that's fine.

23         **THE COURT:**  No.  I intend to do both.  I would like

24   to do both.  And if plaintiffs' counsel agrees to the second

25   alternative, I think that covers it.

1          **MR. ABRAMS:**  Absolutely.  Okay.

2          **THE COURT:**  All right.  Now let's talk a little bit

3      about the state cases.  Who's representing the plaintiffs on

4      the four Santa Clara cases?

5          **MR. AUDET:**  I am, your Honor.  William Audet,

6      A-u-d-e-t.

7          **THE COURT:**  All right.  Okay.  Now, I understand you

8      filed a motion that's on my docket for May 13th for hearing.

9          **MR. AUDET:**  Yeah.  And I assumed it would probably

10     get kicked over.  I did want to file the motion before today's

11     hearing.  I was concerned about -- one could read the statutes

12     that see I had to do it within a certain time period.  My hope

13     is -- and we've been discussing with defense counsel working

14     out a possible remand we're going to work on.  We've been

15     working on a coördination order.  I've worked in the past with

16     Keith Eggelton.  I've had long talks with Mark Seltzer about

17     working out a coördination order that would be to the benefit

18     of everybody.  And so that the state-court process -- the state

19     court's involved, but the federal court sort of takes the lead,

20     to be honest.

21         **THE COURT:**  So are you contemplating a stipulation to

22     remand?

23         **MR. AUDET:**  We -- I don't think we've gotten to that

24     stage.

25         **MR. JACOBSON:**  Yeah.  We're not -- we're not at that

```
 1   stage.  This is an issue I think Mr. Manne is prepared to talk
 2   about.
 3           MR. MANNE:  It's Wal-Mart's.  We are --
 4           THE COURT:  Wait.  I can't hear you.
 5           MR. MANNE:  Neal Manne, for the Wal-Mart defendants.
 6           It's Wal-Mart that removed certain of the California
 7   state court cases.  We are having discussions with counsel
 8   about the possibility of a stipulated remand coördination
 9   orders.  We haven't reached an agreement yet.  We don't know if
10   we will, but we're talking about it.
11           And we have a -- I guess, an opposition brief due on
12   April 22nd.  And we hope to resolve it one way or the other
13   before then.
14           THE COURT:  Mm-hm.  Okay.  All right.
15           Well, obviously, I'm not going to deal with the
16   question of whether or not the procedure should be stayed.  I
17   mean, that's up -- if the case is going to go back to the state
18   court, that's up to them to decide.
19           MR. MANNE:  Right.
20           THE COURT:  If the case comes here and -- I mean, I
21   would treat it just as I would all of the other -- I mean, if
22   the case remains here -- as I would all the other cases.  And
23   so I would assume that you all would continue with your
24   discussions with plaintiffs' counsel.
25           So I do think we need to resolve it sooner rather
```

```
 1  than later, though.  So it's going to remain on my docket for
 2  May 13 -- or whatever the hearing date is -- because it needs
 3  to be resolved then.  So you either need to stipulate to
 4  remand, or I'm going to hear it and make a decision on that
 5  day.
 6          MR. MANNE:  Yes, your Honor.
 7          MR. AUDET:  Very good, your Honor.
 8          THE COURT:  So that is out of the way.
 9          And what about service?  There were some issues with
10  respect to service of the complaint.  Have all of the
11  complaints -- at least, on the 39 cases -- been served?
12          MR. JACOBSON:  Yeah, your Honor.  I'm not aware of
13  any issues on service.
14          We have agreed through the case-management statement
15  that when the consolidated amended complaint was ready, we will
16  -- we have agreed explicitly to accept service of that.
17          THE COURT:  All right.
18          MR. JACOBSON:  So I think that resolves any issue.
19  And I'm not aware of any issue.
20          THE COURT:  I misunderstood, I think, what you said
21  in your statement.
22          MR. JACOBSON:  Yeah.  My colleague, Ms. Walsh, points
23  out that we have not been served with all of the cases yet.  I
24  believe that's true for Wal-Mart as well; but again, I think it
25  will be mooted when the consolidated amended complaint is
```

1  filed.

2          THE COURT:  All right.  So it's a non issue, for your

3  purposes?

4          MR. JACOBSON:  Yes.

5          THE COURT:  All right.  There is a disagreement as to

6  when the answer should be filed.  And you're suggesting 45

7  days.  Plaintiff is suggesting 30 days.  It doesn't really

8  matter to me, as long as it's done in a reasonable fashion.

9          MR. JACOBSON:  Your Honor, there is consideration of

10 a Rule 12(b)(6).  That's hard to cast that until we've seen the

11 complaint.

12          Certainly, we have a general idea of what's going to

13 be in there from the ones that have been filed.  On the

14 assumption that they will adhere to what we've seen, we can do

15 it; but without knowing, really, what's in the consolidated

16 amended complaint, it seems that the extra 15 days in the

17 context of this case is not, you know, a big --

18          THE COURT:  Well, what's the 12(b)(6) issue at this

19 point that you see so far?

20          MR. JACOBSON:  There are a couple, but the first is

21 whether there is sufficient allegation of a per se violation as

22 alleged in the complaint.  We think the case is plainly not a

23 per se case.  That's one of the issues that is addressed in the

24 case-management Order.

25          And would go further, and say that the allegations

1   under *Twombly* are insufficient to allege a per se violation.

2          Whether we're actually going to go forward with a

3   12(b)(6) or not is a decision that has not been made.  That is

4   the subject of some discussions among the Susman firm and ours;

5   but we don't want to agree to a schedule that pretermits our

6   ability to file such a motion, and hence the request for a few

7   extra days.

8          **THE COURT:**  Okay.

9          **MR. ABRAMS:**  May I?

10         **THE COURT:**  Sure.

11         **MR. ABRAMS:**  I don't want to stand here and argue

12  before your Honor over 15 days, but what I do want to say to

13  the Court is:  it's pretty clear what the complaint will be.

14  They saw it on January 2nd.  It was our complaint.  And that's

15  what they're going to see when they see a consolidated amended

16  complaint.

17         I will go so far as to put myself out on a limb --

18  and let them saw me off, if they can -- but you will not see a

19  *Twombly* motion.

20         I don't know what other kind of motion they may file,

21  but I am -- I should tell your Honor I have been practicing for

22  35 years as a defense lawyer.  I am in this case, obviously, as

23  a plaintiff lawyer.

24         I was just in the fuel-surcharge cases.  We filed a

25  *Twombly* motion.  We won the *Twombly* motion.

```
 1              There's an agreement here.  There's no basis for a
 2    Twombly motion.
 3              Now, the defendants in this case want to focus the
 4    Court.  And they keep talking about a "per se claim."  We have
 5    a per se claim under Section 1.  We have a rule-of-reason claim
 6    under Section 1.
 7              THE COURT:  They say that you don't.
 8              MR. ABRAMS:  Well, all we have to do --
 9              I'll read it to you.
10              THE COURT:  I was a little confused, because they say
11    that you don't allege a rule-of-reason claim.
12              MR. ABRAMS:  Yeah, we do.
13              MR. JACOBSON:  No, your Honor, that is not --
14              THE COURT:  That's what you said.
15              MR. JACOBSON:  If it reads that way, that is poor
16    drafting on our part.  We did not mean to say that.  There is
17    certainly an allegation of --
18              THE COURT:  Page 18 of the case-management statement,
19    line 20.
20              MR. JACOBSON:  Okay.  Let me -- I'm wrong often
21    enough that I should read this.
22              THE COURT:  It says defendants would then prevail on
23    the merits, or plaintiffs would be required to pursue with
24    their reliability under the rule of reason that they have not
25    yet alleged.
```

1    **MR. JACOBSON:**  Your Honor, we're not trying to say

2  there that there's no allegation of a rule-of-reason claim

3  here.

4         We are -- what we are saying here is that the

5  allegations of market impact in the complaint are insufficient,

6  in our judgment, to adequately set forth a claim under the rule

7  of reason.

8         **THE COURT:**  Oh.

9         **MR. JACOBSON:**  But any motion that would be filed

10  under *Twombly*, I -- at least from Netflix's perspective, would

11  be directed at knocking at the per se claim; not the

12  rule-of-reason claim in the complaint.

13        **THE COURT:**  Okay.

14        **MR. MANNE:**  And, your Honor, my recollection on this

15  is actually a little bit different.

16        I think in the initial complaints that were filed,

17  there was no reference to a rule-of-reason claim, and that it

18  was only in relatively recent amended filings in some of the

19  plaintiffs' cases that there was an express reference to a

20  rule-of-reason claim.  I don't think there was initially a

21  rule-of-reason claim pled at all; but clearly now -- and that's

22  what counts -- clearly now, there are at least some amended

23  filings that do reference rule of reason.

24        **THE COURT:**  Well, I will -- I will go so far as to

25  assume that plaintiffs will clear up any ambiguity in their

1  consolidated amended complaint.  They've stated pretty clearly

2  that they believe they're pursuing a per se violation and

3  rule-of-reason violation and something else.

4            **MR. ABRAMS:**  Yes.  Conspiracy to monopolize under

5  Section 2, and an attempt to monopolize, and monopolization

6  against Netflix under Section 2; but I would like to,

7  your Honor, read for the Court and Mr. Manne paragraph 66 of

8  the very first complaint -- our complaint -- that was filed in

9  this case.  And the second sentence says,

10            Even if evaluated under the rule of

11            reason, the Market Division Agreement is an

12            unreasonable restraint of trade, in

13            violation of Section 1 of the Sherman Act,

14            15 U.S.C.  Section 1.

15            We pled it in the first complaint.  That was filed on

16  January 2.  We are telling your Honor it is both a per se claim

17  and a rule-of-reason claim.  There is no ambiguity about it.

18  And there is a Section 2 claim as well that I just said.

19            **MR. JACOBSON:**  All right.  Your Honor, let me clear

20  it up --

21            **THE COURT:**  Okay.

22            **MR. JACOBSON:**  -- because this is an issue in the

23  case.

24            So what is alleged in the complaint is a Market

25  Division Agreement, an agreement pursuant to which Wal-Mart

1  agreed to exit the on-line D.V.D. rental business.  And

2  Netflix, in turn, agreed not to enter the sale of new D.V.D.s.

3       It is that alleged agreement which, A, we think is

4  wholly unsubstantiated by any facts, and, B, which we do not

5  believe is adequately pled under *Twombly*.

6       And we haven't determined whether it's provident to

7  make a motion like that, since it may result in amendments

8  rather than ultimate dismissal.  And that's pending further

9  discussion among the defendants, and evaluation; but what is

10  not alleged in the complaint is that the very public agreement

11  that these parties did enter into -- a joint promotion

12  agreement -- accompanied by a press release, and a news

13  conference, and a show on C.N.B.C. on May 19th, 2005, pursuant

14  to which Netflix agreed to promote D.V.D. sales of Wal-Mart,

15  and Wal-Mart agreed, in turn, to promote its subscribers

16  shifting over to Netflix -- we do not believe that that

17  agreement, which did exist, which is in writing, which is

18  undisputed, has been alleged in this complaint to constitute a

19  violation of law.

20       And, indeed, that agreement was looked at by the

21  Federal Trade Commission, and given a big yawn on the basis

22  that it had no conceivable impact on competition.

23       So that is the difference that splits us here today.

24  There's no question that the complaint alleges both a per se

25  illegal Market Division Agreement.  Whether the allegations are

1  sufficient under *Twombly* is a separate issue, but certainly the

2  words are used that there's a per se division of market.

3  There's also no question that the words are used that this

4  division of markets that they say violated the rule of reason.

5          What is not alleged in the complaint is whether the

6  agreement that actually did exist that was announced

7  publicly -- this case is so different from DRAM, which I know

8  you have a lot of experience with.  Samsung and Micron did not

9  announce a press release when they had their meetings together.

10 This is a fundamentally different case.  So that -- I do want

11 to clear that up before your Honor; but this is the issue that

12 will be litigated by motion in this case, no matter what

13 schedule is reached.

14          **MR. ABRAMS:**  May I, your Honor?

15          **THE COURT:**  Sure.

16          **MR. ABRAMS:**  Counsel appears to want to argue a

17 motion to dismiss today.

18          I'd like to tell your Honor what really happened in

19 this marketplace.

20          Counsel referred to an agreement.  It was publicly

21 announced May 19, 2005.  They choose to call it a

22 co-promotional agreement, whereby Netflix would not sell

23 D.V.D.s, and Wal-Mart got out of the rental business.  That's

24 the bottom line.

25          Let's look at the marketplace that existed in 2004.

1   In the middle of 2004, Netflix had a three-out.  That means you

2   could take -- well, you know -- three D.V.D.s.  And their price

3   in June was 21.99.  Wal-Mart's price was 18.96.  And

4   Blockbuster, the third renter of D.V.D.s -- their price was

5   19.99.

6               And what did Wal-Mart do?

7               Well, Wal-Mart dropped its price in November of 2004

8   to $17.36.

9               Netflix followed suit in November of 2004, $17.99.

10              And so does Blockbuster:  $17.49.

11              What happens next?

12              In January of '05, Wal-Mart drops its price to

13  $12.97.

14              And, instead of responding to that competition by

15  lowering its price, what does Netflix do?

16              Reed Hastings, the CEO of Netflix, calls

17  John Fleming, the CEO of Walmart.com, and has a dinner.

18  Publicly reported.  They have a dinner.  And they have

19  discussions over the next number of weeks.

20              And what happens as a result of those discussions?

21              The May 19 agreement that we just both talked about,

22  whereby Wal-Mart gets out of the rental business; Netflix out

23  of the sales business.

24              Now, you might think:  gee, does that make sense?

25  Netflix has this great base of people that like to watch

1    D.V.D.s.  Those same people are, quote, "voracious buyers" of

2    D.V.D.s.  A substantial number of those people buy 25 D.V.D.s a

3    year.  Why would you give up those sales, and, by the way,

4    promote Wal-Mart -- promote Wal-Mart's sales of D.V.D.s to its

5    customers?

6              Wal-Mart now has 40 percent of the D.V.D. sales

7    market in the U.S.  Forty percent.

8              Wal-Mart gets out of the rental business not because,

9    as you read in the case-management statement -- because they're

10   a failing business.  I'll tell you why in a second.  They're

11   not a failing business.  It's hard to believe Wal-Mart's a

12   failing business at anything; but I'll tell you why.  They got

13   out because they got the market on sales.

14             Now, we saw in the statement that Wal-Mart was

15   failing.  It didn't -- only had 1 percent of the market.

16             Well, in *The New York Times* in October 2004, two

17   months before this meeting, Kevin Swint, October 24, 2004 -- he

18   was Walmart.com's director of entertainment and photo -- was

19   quoted in *The New York Times* as saying that Wal-Mart's rental

20   business had, quote, "grown beyond expectations," end quote.

21   And he went on to say, quote, "We're really bullish about this

22   service, and our customers are enthusiastic."

23             This is right before their getting out of the

24   business.

25             Amy Colella, C-o-l-e-l-l-a, of Wal-Mart said, quote,

1 "It's a viable business for us, with growth potential."  And

2 she added that Wal-Mart had plans to additional distribution

3 centers in 2005.  That was said on December 29, 2004, shortly

4 before this dinner.

5          And, to top it off -- to top it off, Mr. Hastings, in

6 a statement to investors after the dinner but before the May 19

7 announcement, said he, quote, "predicted," end quote, that the

8 market would go from three firms to a more profitable two-firm

9 market in the near future.  Okay?  That's a CEO.

10          Now, that's what we plead in our complaint.  We plead

11 it as a per se violation.  We plead it as a rule-of-reason

12 violation.  We say it's a conspiracy amongst these defendants

13 to monopolize the rental market.  And we say against Netflix

14 that it was an attempt to monopolize and monopolization under

15 Section 2.

16          I say all that to your Honor in response to Counsel's

17 characterization of our complaint.

18          Now you have the plaintiffs' characterization of its

19 complaint.

20          **THE COURT:**  Okay.  Thanks for the preview of upcoming

21 motions on the merits of the complaint.  I don't really need to

22 hear -- I don't really need to hear any response to that.  It's

23 all interesting.  The case sounds interesting to me.  I'm sure

24 you all will present some interesting motions in the future --

25          **MR. JACOBSON:**  Thank you.

1          **THE COURT:**  -- but that's for the future.

2          Let's talk about what we're going to deal with now.

3          It's the -- the whole issue, though, is important to

4    case management solely because of this plan that the defendants

5    have proposed to approach the case in kind of four stages of

6    discovery -- of discovery.  Well, you say two, but there are

7    four listed.  There are four different discovery phases that

8    are listed in the defendants' proposal on discovery.

9          I am not really interested in four different phases.

10   All right?

11         Now, I don't generally enter case-management orders

12   with the kind of detail -- the dates and deadlines with the

13   kind of detail that you have proposed on the defense side.

14   It's a little more -- yours is a little more complicated than

15   the proposal submitted by the plaintiffs; but I want you all to

16   go forward and meet and confer about it.

17         I'm not going to set a discovery deadline or a

18   class-certification deadline today.  That will be in the next

19   pretrial order; but I do want you all to understand what my

20   preferences would be.

21         First of all, with this notion that having an early

22   summary-judgment motion and having focused discovery on that

23   issue -- on the class-cert issues and on the rule-of-reason

24   aspect of the agreement first -- I mean, that would make sense

25   to me only if it really meant that it was going to be likely to

1  pare down the case substantially.  Given that the defense has

2  other theories besides the rule of reason, I'm not so sure that

3  it doesn't unnecessarily complicate matters.

4          It would make far more sense to me to -- if I were

5  going to bifurcate the case, to bifurcate liability from

6  damages, frankly, more than it would to do it in the phases

7  that you anticipate.  So it's not likely I'm going to approve

8  the defense proposal.  It's far too complicated, I think.  And

9  the line between what's necessary -- what discovery's necessary

10  for class certification and for merits is often a very

11  difficult line to delineate.

12          So I -- it's not likely that I'm going to bifurcate

13  or trifurcate in the way in which you all have suggested; but I

14  want you to talk about it further.

15          And hopefully you'll be able to come to some kind of

16  an agreement about case scheduling before the next pretrial

17  conference; but the deadlines that I want to set today are

18  simply the deadline for the plaintiffs' structuring and lead

19  plaintiffs' counsel's motion or stipulation deadline for filing

20  the consolidated amended complaint.

21          You may have the 45 days for filing your response.

22  If you decide you want to file a 12(b) motion, that's fine.

23  Keep in mind, however, I'm going to likely grant leave to

24  amend.  I'm sure they've all been taking notes about the -- the

25  problems that you have with it.  And I would suspect that the

1  consolidated amended complaint will address any of the

2  ambiguities that you believe exist with the current complaint.

3  So perhaps a 12(b)(6) motion won't be necessary.

4        I do want to take the opportunity to tell you all

5  that I would appreciate if -- as you litigate this group of

6  cases, that you keep in mind the constraints on the Court's

7  resources.  This is my second MDL.  I don't get any additional

8  resources for taking the MDL.  And I expect this -- since it

9  doesn't have all the different components that DRAM has brought

10 me, I would expect this to be litigated as though it's one big

11 antitrust case.

12        I expect there to be coördination, so that I get one

13 motion.  I am hoping that the defense will agree, to the extent

14 possible, that the Wal-Mart and Netflix interests are similar,

15 and can be -- you all can join in and file a consolidated

16 motion.  I would expect you to be able to do that and --

17 depending upon the type of motion; but I expect you at least to

18 give that consideration and to try.

19        Keep in mind I have about 500 cases.  All of my cases

20 are equally important to the litigants before me.  They're all

21 equally important to me.  Some are more time consuming than

22 others, and I have to necessarily make that -- do that

23 balancing for everything that comes across my desk; but I do

24 expect you all, who are all experienced counsel -- and I know

25 you know how to do it.  And, in fact, you did it very well in

1  the direct-purchaser portion of the DRAM case.  So I know that

2  you're able to do it, but you need to keep in mind when you

3  present things to me, particularly motion practice -- one of

4  the things I particularly appreciated in the direct-purchaser

5  DRAM portion of the case was that I really did feel at the end

6  of the day that the motions that were brought to me were

7  necessary motions; necessary to keep the litigation going, and

8  necessary to developing the various different aspects of the

9  litigation so that they could be presented in a way that they

10  could be resolved.

11          I really don't like a lot of unnecessary motions and

12  a lot of 12(b) motions.  And I don't mean to suggest that yours

13  would be unnecessary, but a lot of 12(b) motions that I see are

14  totally a waste of my time.  And usually after the third one, I

15  say, "Enough's enough.  I'm not going to let you file any

16  more," but they can go on and on and on and on.  And sometimes

17  it's just totally unnecessary, and doesn't serve the purpose of

18  advancing the litigation in any meaningful way.  So keep that

19  in mind.

20          In terms of your presentations to the Court, just

21  keep in mind:  if you had 500 cases, how would you like the

22  motion presented?  Do you want it as focused as can be; as

23  concise as can be; as clear as can be?  You want user-friendly

24  documents.  You don't want stacks and stacks of things without

25  tabs.  I want color coding, and all of that.  I want something

1   that's easy, so I can pick it up.  That's what gets my

2   attention:  a nice, crisp, clearly written brief that's easy to

3   read, and fine documents attached to it.  Okay?  So just keep

4   that in mind.  And I'm sure that you all have learned from the

5   DRAM litigation how to do that.

6          So I will issue an Order with respect to the

7   deadlines that we've set today.  There's only been a few.

8          What I'd like is a further case-management conference

9   after all of the cases are here, after the lead counsel has

10  been decided.  It's -- that's not a motion that I think I would

11  need a hearing on, but I'll reserve decision on that until

12  after I see if I get motions or a stipulation in that; but as

13  soon as everything is settled, then we're going to want to talk

14  about scheduling, class certification, dispositive motions,

15  discovery, et cetera.

16         So I'll leave it up to you all to contact

17  Ms. Heuerman once it's all settled.  And she'll give you a date

18  over the phone, or we'll issue a notice once you tell me that

19  you all are ready for that.  I would anticipate a further

20  conference in about 90 days.

21         **THE COURT:**  In about 90 days.  Actually, why don't we

22  give you a date now?  And if everything's not settled, then you

23  call her and you can change that.

24         **THE CLERK:**  July 9th.

25         **THE COURT:**  All right.  July 9th, Thursday, 2:30 in

1  the afternoon.  Okay?

2          Hearing no objections, that's when it will be.

3          If, indeed, everything's not settled at that time,

4  like I said, we have flexibility, and we'll move that date.

5          In terms of -- just to give you a heads-up in terms

6  of discovery, I will be, obviously, sending most discovery to

7  Magistrate Judge Spero, who's also working on the DRAM case.

8  He's got good procedures in place to handle the disputes.  So I

9  will ask you before the next case-management conference to

10 prepare another joint case-management statement dealing with

11 the scheduling issues.  You can write that into the plan.

12         Okay.  That takes care of my issues.

13         Does anyone else wish to raise any issues before I

14 continue on with my calendar?

15         **MR. JACOBSON:**  Just one, your Honor.  This is going

16 to be a little antitrust case; not a big antitrust case.

17         **THE COURT:**  Can I hold you to that?

18         **MR. JACOBSON:**  Yeah.

19         **THE COURT:**  Okay.  Well, you certainly have something

20 to do with that, so I'll take you at your word.  In any event,

21 it does sound like it will be an interesting case.  I'm

22 certainly more than happy to work on it.

23         **MR. ABRAMS:**  Thank you, your Honor.

24         **MR. G. SAVERI:**  Mr. Jacobson, if he comes through,

25 he's going to stipulate to adjustments.  And that will take

```
 1  care of everything.  I don't know about --

 2            THE COURT:  I'll keep my fingers crossed.

 3            MR. G. SAVERI:  John will do that very quickly,

 4  right?

 5            MR. JACOBSON:  Absolutely.

 6            THE COURT:  All right.  Then we'll see you in July,

 7  unless you ask.  You can ask to have it advanced or to have it

 8  continued if the MDL matters have not been settled.

 9            MR. G. SAVERI:  Thank you.

10            MR. ABRAMS:  Thank you.

11            MR. JACOBSON:  Thank you, your Honor.

12            (At 2:35 p.m. the proceedings were adjourned.)

13

14                         -   -   -   -

15

16

17

18

19

20

21

22

23

24

25
```

## CERTIFICATE OF REPORTER

   I, LYDIA ZINN, Official Reporter for the United States Court, Northern District of California, hereby certify that the foregoing proceedings in C. 09-002-PJH, Andrea Resnick, et al., v. Walmart.com USA LLC, et al., were reported by me, a certified shorthand reporter, and were thereafter transcribed under my direction into typewriting; that the foregoing is a full, complete and true record of said proceedings as bound by me at the time of filing.

  The validity of the reporter's certification of said transcript may be void upon disassembly and/or removal from the court file.

_____

/s/ Lydia Zinn, CSR 9223, RPR

Monday, April 20, 2009